FILED

2007 JAN 30 PM 1:51

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2006 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-1011(B)-SJO |
| Plaintiff, | ) ) ) | S E C O N D<br>S U P E R S E D I N G<br>I N D I C T M E N T |
| v. | ) ) | |
| LE HUA WU,<br>  aka Amy,<br>KHANG TRONG NGUYEN,<br>  aka Alex,<br>QUAN DUC NGO,<br>  aka Kevin, and<br>KIET TRI TU,<br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | [21 U.S.C. §§ 846, 841(a)(1):<br>Conspiracy to Distribute and<br>Possess with Intent to Distribute<br>Controlled Substances; 18 U.S.C.<br>§§ 1956(h), 1956(a)(1)(A)(i),<br>1956(a)(1)(B)(ii), 1957:<br>Conspiracy to Launder Money; 21<br>U.S.C. § 841(a)(1): Distribution<br>of MDMA; 21 U.S.C. § 841(a)(1):<br>Possession with Intent to<br>Distribute MDMA; 21 U.S.C.<br>§ 841(a)(1): Possession with<br>Intent to Distribute Ketamine; 21<br>U.S.C. § 841(a)(1): Possession<br>with Intent to Distribute<br>Marijuana; 21 U.S.C. § 853, 18<br>U.S.C. § 982: Criminal Forfeiture;<br>18 U.S.C. § 2(a): Aiding and<br>Abetting] |

KSR:ksr

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1)]

A.   OBJECTS OF THE CONSPIRACY

Beginning on an unknown date and continuing to on or about November 17, 2005, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LE HUA WU, also known as ("aka") Amy ("WU"), KHANG TRONG NGUYEN, aka Alex ("NGUYEN"), QUAN DUC NGO, aka Kevin ("Q. NGO"), KIET TRI TU, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses defined in 21 U.S.C. § 841(a)(1), namely:

1.   distribution of 3,4-methylenedioxymethamphetamine (MDMA), a schedule I controlled substance;

2.   possession with intent to distribute MDMA, a schedule I controlled substance;

3.   distribution of ketamine, a schedule III controlled substance;

4.   possession with intent to distribute ketamine, a schedule III controlled substance; and

5.   possession with intent to distribute marijuana, a schedule I controlled substance.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.   Co-conspirator Diana Ying Ying Huang, aka Diana ("Huang"), would supply defendants WU and NGUYEN with MDMA.

2.   Defendants WU and NGUYEN would obtain MDMA from co-conspirator Huang and other unknown suppliers.

3.   Defendants WU and NGUYEN would obtain ketamine and marijuana from unknown suppliers.

4.   Co-conspirator Hak Yu Poon, aka Candy, aka Connie ("Poon") would store MDMA and ketamine for defendants WU and NGUYEN.

5.   Defendants WU and NGUYEN would sell MDMA to co-conspirator Duong Chiu, aka Michael ("Chiu"), defendant Q. NGO, and known and unknown customers.

6.   Defendants WU and NGUYEN would sell ketamine and marijuana to known and unknown customers.

7.   Defendant Q. NGO, and co-conspirators Chiu and Poon would sell MDMA to defendant TU and known and unknown customers.

8.   Co-conspirator Ka Wai Un, aka Wendy ("Un"), would assist co-conspirator Chiu by negotiating with customers and acting as a lookout during MDMA transactions.

9.   Defendant TU would obtain MDMA from co-conspirator Poon for further distribution.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants and others known and unknown to the Grand Jury, committed various overt acts on or about the following dates, within the Central District of California and elsewhere, including but not limited to the following:

1.   On September 2, 2004, using coded language in a telephone conversation, co-conspirator Chiu and co-conspirator Un spoke with an undercover law enforcement agent posing as a MDMA customer ("UC") about selling the UC 1,000 MDMA tablets.

2.   On September 3, 2004, using coded language in a telephone conversation, co-conspirator Chiu and co-conspirator Un confirmed with the UC the price and quantity of MDMA the UC was to purchase later that day.

3.   On September 3, 2004, at the Montclair Plaza shopping center in Montclair, California (the "Montclair Plaza"), co-conspirators Chiu and Un delivered approximately 1,000 MDMA tablets (approximately 235 grams of MDMA) to the UC for $4,500.

4.   On September 7 and 8, 2004, using coded language in telephone conversations, co-conspirator Chiu and defendant Q. NGO spoke with the UC about selling him 2,000 MDMA tablets for $9,000.

5.   On September 9, 2004, using coded language in a telephone conversation, co-conspirator Chiu agreed to sell the UC MDMA tablets at the Montclair Plaza later that day.

1    6.   On September 9, 2004, co-conspirator Chiu and defendant
2  NGUYEN drove in separate cars in tandem from a restaurant parking
3  lot in San Gabriel, California, to the Montclair Plaza, with
4  defendant WU traveling as a passenger in defendant NGUYEN's car.

5    7.   On September 9, 2004, using coded language in a
6  telephone conversation, co-conspirator Chiu and defendant NGUYEN
7  spoke with the UC about where they would conduct the MDMA
8  transaction at the Montclair Plaza.

9    8.   On September 9, 2004, at the Montclair Plaza, co-
10 conspirator Chiu and defendants NGUYEN and WU delivered
11 approximately 2,000 MDMA tablets (approximately 429 grams of
12 MDMA) to the UC for $9,000.

13    9.   On September 9, 2004, using coded language in a
14 telephone conversation, co-conspirator Chiu and the UC discussed
15 the sale of 20,000 MDMA tablets to the UC.

16   10.  On October 7, 2004, using coded language in a telephone
17 conversation, defendant WU agreed to supply 1,000 MDMA tablets to
18 co-conspirator Chiu.

19   11.  On October 8, 2004, in San Gabriel, California, at
20 defendant WU's direction, defendant NGUYEN delivered
21 approximately 1,000 MDMA tablets to co-conspirator Chiu.

22   12.  On October 8, 2004, using coded language in a telephone
23 conversation, co-conspirator Chiu told defendant WU that a buyer
24 wanted $1,000 worth of MDMA, not 1,000 tablets.

25   13.  On October 8, 2004, using coded language in a telephone
26 conversation, co-conspirator Chiu and defendant WU discussed how

27

28                                    5

much money co-conspirator Chiu owed defendant WU and how much money co-conspirator Chiu had given to defendant NGUYEN.

14. On October 22, 2004, using coded language in a telephone conversation, defendant WU instructed an unindicted co-conspirator to pick up payment for the future sale of 50 "hammer" logo MDMA tablets that defendant WU would supply.

15. On October 22, 2004, using coded language in a telephone conversation, defendants NGUYEN and WU discussed selling an unindicted co-conspirator customer 500 MDMA tablets for $4.00 per tablet or 1,000 MDMA tablets for $3.75 per tablet.

16. On October 23, 2004, using coded language in a telephone conversation, defendant WU told co-conspirator Poon that she did not have 7,000 "human" logo MDMA tablets, but could supply co-conspirator Poon with 4,000 "human" logo MDMA tablets, 2,000 "duck" logo MDMA tablets, and 1,000 "hammer" logo MDMA tablets.

17. On October 23, 2004, using coded language in a telephone conversation, defendant WU spoke with an unidentified co-conspirator about meeting him to pick up 5,000 MDMA tablets.

18. On October 23, 2004, using coded language in a telephone conversation, defendant WU told an unidentified co-conspirator that she would keep 5,000 "plane" logo MDMA tablets that he had delivered to her, but that she wanted an additional 5,000 "male" MDMA logo tablets as soon as he received them.

6

19.   On October 23, 2004, using coded language in a telephone conversation, defendant WU offered to sell co-conspirator Poon one-half of a pound of marijuana for $3,000.

20.   On October 23, 2004, using coded language in a telephone conversation, defendant WU informed an unidentified co-conspirator that she had liquid ketamine available for sale but she did not have powder ketamine.

21.   On October 23, 2004, using coded language in a telephone conversation, defendant WU told an unidentified co-conspirator that she could sell him five or six vials of ketamine for $55 each.

22.   On October 24, 2004, using coded language in a telephone conversation, defendant NGUYEN told defendant WU that he would meet with defendant WU's buyer to complete the sale of 5,000 MDMA tablets, which were better than the MDMA tablets that defendant WU had delivered the previous night.

23.   On October 24, 2004, using coded language in a telephone conversation, co-conspirator Poon told defendant WU that she had $2,300 for defendant WU.

24.   On October 24, 2004, using coded language in a telephone conversation, defendant WU told defendant Q. NGO that she needed to sell 5,000 MDMA tablets for $3.25 per tablet that day.

7

1    25.   On October 25, 2004, using coded language in a
2  telephone conversation, defendant NGUYEN advised an unidentified
3  co-conspirator that he would not pay more than $33 to $35 per
4  bottle to buy ketamine.

5    26.   On October 26, 2004, using coded language in a
6  telephone conversation, defendant WU directed defendant NGUYEN to
7  switch 5,000 MDMA tablets for another type of MDMA tablets that
8  were to be delivered to an unindicted co-conspirator.

9    27.   On October 27, 2004, using coded language in a
10  telephone conversation, defendant WU agreed to sell an unindicted
11  co-conspirator 400 MDMA tablets, but stated that the co-
12  conspirator needed to have the money ready to pay for the MDMA.

13    28.   On October 29, 2004, using coded language in a
14  telephone conversation, co-conspirator Huang advised defendant WU
15  that shipments of MDMA would arrive in Southern California within
16  a few days, including MDMA of a similar type that co-conspirator
17  Huang had previously supplied.

18    29.   On October 30, 2004, using coded language in a
19  telephone conversation, defendant WU told co-conspirator Poon
20  that defendant NGUYEN could not pick up money from her at that
21  time because he was busy and defendant WU would call her back
22  later.

23    30.   On October 30, 2004, using coded language in a
24  telephone conversation, defendant WU told an unidentified co-
25  conspirator that she could sell him 100 vials of ketamine at a
26  time for $55 per vial.

27
28                                    8

31.   On November 3, 2004, using coded language in a telephone conversation, defendant WU and co-conspirator Huang discussed the problem defendant WU was having selling MDMA, and the arrival of another MDMA shipment.

32.   On November 4, 2004, using coded language in a telephone conversation, defendant WU told co-conspirator Poon that she could supply co-conspirator Poon with 3,000 to 4,000 MDMA tablets.

33.   On November 9, 2004, using coded language in a telephone conversation, defendant WU told co-conspirator Poon to sell the old MDMA tablets first because the new shipment of MDMA had not arrived yet.

34.   On November 11, 2004, using coded language in a telephone conversation, defendant WU and co-conspirator Un discussed the sale of 2,000 MDMA tablets to the UC.

35.   On November 15, 2004, using coded language in a telephone conversation, defendant WU told defendant NGUYEN that the "Audi" logo package of MDMA tablets contained 100 extra tablets.

36.   On November 22, 2004, using coded language in a telephone conversation, defendant WU advised an unindicted co-conspirator that she had MDMA available and the unindicted co-conspirator informed defendant WU that he would bring the money to her house in approximately 15-20 minutes.

37.   On November 22, 2004, using coded language in a telephone conversation, defendant WU agreed to meet an unindicted

1    co-conspirator in order for defendant WU to collect $2,450 for a
2    prior MDMA transaction.

3        38.   On November 23, 2004, using coded language in a
4    telephone conversation, co-conspirator Poon told defendant WU
5    that approximately 54 MDMA tablets were missing from a recent
6    shipment.

7        39.   On November 23, 2004, using coded language in a
8    telephone conversation, defendant WU directed an unidentified
9    co-conspirator to contact co-conspirator Poon in order to obtain
10   MDMA tablets.

11       40.   On November 28, 2004, using coded language in a
12   telephone conversation, defendant WU advised an unindicted co-
13   conspirator to pick up MDMA even though the unindicted co-
14   conspirator only had one-half of the money.

15       41.   On November 30, 2004, in San Gabriel, California, co-
16   conspirator Poon delivered approximately 1,000 MDMA tablets
17   (approximately 265 grams of MDMA) to defendant TU.

18       42.   On November 30, 2004, in San Gabriel, California, co-
19   conspirator Poon possessed approximately 2,000 MDMA tablets
20   (approximately 452 grams of MDMA), items used to sell MDMA,
21   including plastic baggies, a scale, and clear capsules, and
22   approximately 120 grams of ketamine.

23       43.   On December 22, 2004, using coded language in a
24   telephone conversation, co-conspirator Huang asked defendant WU
25   if defendant WU could sell MDMA for her because the price had
26   dropped significantly.

27

28                                10

44.   On December 23, 2004, using coded language in a telephone conversation, co-conspirator Huang advised defendant WU that she had over 10,000 "flower," "fish," "body," and "star" logo MDMA tablets available for purchase at $3.00 per tablet.

45.   On December 29, 2004, using coded language in a telephone conversation, co-defendant Poon informed defendant WU that she had been collecting money all day and she had approximately $4,000 ready for defendant WU.

46.   On November 17, 2005, in San Gabriel, California, defendants WU and NGUYEN possessed approximately 1050 grams of ketamine and approximately 135 grams of marijuana.

COUNT TWO

[18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(ii), 1957]

A.   OBJECT OF THE CONSPIRACY

Beginning on an unknown date and continuing until on or about December 29, 2004, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LE HUA WU, also known as ("aka") Amy ("WU"), KHANG TRONG NGUYEN, aka Alex ("NGUYEN"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses against the United States:

Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, narcotics trafficking in violation of 21 U.S.C. § 841(a)(1):

1.   to conduct and attempt to conduct financial transactions with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

2.   to conduct and attempt to conduct financial transactions knowing that the transaction was designed in whole or in part to avoid a transaction reporting requirement under State or Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii); and

12

3.   to engage and attempt to engage in monetary transactions in criminally derived property that were of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1-9.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 9 of Section B of Count One setting forth the means of the conspiracy charged in Count One.

10.   Defendants NGUYEN and WU would deposit cash and money orders representing the proceeds of narcotics trafficking into their bank accounts in amounts designed to avoid currency reporting requirements.

11.   Defendants NGUYEN and WU would purchase real and personal property of a value greater than $10,000 with narcotics proceeds.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants and others known and unknown to the Grand Jury committed various overt acts, within the Central District of California and elsewhere, including but not limited to the following:

1-46. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 46 of Section C of Count One

13

1  setting forth the overt acts of the conspiracy charged in Count

2  One.

### Structured Deposits of Cash

4       On the dates set forth below, defendants NGUYEN and WU

5  caused the deposits of cash into their checking accounts as

6  identified below:

| Overt Act | Date | Bank | Account No. | Cash Amount Deposited |
|---|---|---|---|---|
| 47 | 6/11/2004 | Bank of America | XXXXX-06329 | $6,000 |
| 48 | 6/16/2004 | Bank of America | XXXXX-06329 | $9,000 |
| 49 | 6/17/2004 | Bank of America | XXXXX-06329 | $9,000 |
| 50 | 6/17/2004 | Wells Fargo | XXXX-465249 | $9,000 |
| 51 | 6/18/2004 | Bank of America | XXXXX-06329 | $6,000 |
| 52 | 6/18/2004 | Wells Fargo | XXXX-465249 | $6,000 |
| 53 | 6/22/2004 | Bank of America | XXXXX-06329 | $8,000 |
| 54 | 6/23/2004 | Bank of America | XXXXX-06329 | $3,000 |
| 55 | 7/19/2004 | Bank of America | XXXXX-06329 | $6,000 |
| 56 | 7/22/2004 | Bank of America | XXXXX-06329 | $4,000 |
| 57 | 7/23/2004 | Bank of America | XXXXX-06329 | $8,000 |
| 58 | 7/27/2004 | Bank of America | XXXXX-06329 | $3,000 |
| 59 | 9/9/2004 | Bank of America | XXXXX-06329 | $9,000 |

### Other Transactions

22       60.  On June 17, 2004, defendants NGUYEN and WU wrote check

23  number 0950 from Wells Fargo account no. XXXX-465249 in the

24  amount of $15,000, made payable to Jade Escrow as a down payment

25  for the October 1, 2004 purchase of their residence in San

26  Gabriel, California (the "San Gabriel residence").

14

61. On June 17, 2004, defendant NGUYEN delivered to Jade Escrow check number 0950 from Wells Fargo account no. XXXX-465249 in the amount of $15,000, made payable to Jade Escrow, as a payment for the purchase of the San Gabriel residence.

62. On September 24, 2004, defendants NGUYEN and WU caused $7,000 in money orders to be deposited into their Bank of America account no. XXXXX-06329.

63. On September 24, 2004, defendant NGUYEN purchased Bank of America cashier's check number 2018407667 in the amount of $50,000, made payable to Jade Escrow, as a payment for the purchase of the San Gabriel residence.

64. On September 24, 2004, defendant NGUYEN delivered to Jade Escrow Bank of America cashier's check number 2018407667 in the amount of $50,000, made payable to Jade Escrow, as a payment for the purchase of the San Gabriel residence.

65. On October 29, 2004, defendant NGUYEN purchased Bank of America cashier's check number 2018408295 in the amount of $15,000, made payable to Calstar Motors, Inc., as down payment for the purchase of a Mercedes automobile.

COUNT THREE

[21 U.S.C. § 841(a)(1), 18 U.S.C. § 2(a)]

On or about September 9, 2004, in Los Angeles County, within the Central District of California, defendants LE HUA WU, also known as ("aka") Amy, and KHANG TRONG NGUYEN, aka Alex, knowingly and intentionally distributed approximately 429 grams of 3,4-methylenedioxymethamphetamine (MDMA), a schedule I controlled substance.

At the above time and place, defendant QUAN DUC NGO, aka Kevin, knowingly and intentionally aided, abetted, counseled, commanded, induced, procured, and caused the commission of the offense alleged above by negotiating the price, type, and quantity of MDMA involved in the transaction.

16

COUNT FOUR

[21 U.S.C. § 841(a)(1)]

On or about November 30, 2004, in Los Angeles County, within the Central District of California, defendant KIET TRI TU knowingly and intentionally possessed with intent to distribute approximately 265 grams of 3,4-methylenedioxymethamphetamine (MDMA), a schedule I controlled substance.

COUNT FIVE

[21 U.S.C. § 841(a)(1)]

On or about November 17, 2005, in Los Angeles County, within the Central District of California, defendants LE HUA WU, also known as ("aka") Amy, and KHANG TRONG NGUYEN, aka Alex, knowingly and intentionally possessed with intent to distribute approximately 1050 grams of ketamine, a schedule III controlled substance.

## COUNT SIX

[21 U.S.C. § 841(a)(1)]

On or about November 17, 2005, in Los Angeles County, within the Central District of California, defendants LE HUA WU, also known as ("aka") Amy, and KHANG TRONG NGUYEN, aka Alex, knowingly and intentionally possessed with intent to distribute approximately 135 grams of marijuana, a schedule I controlled substance.

COUNT SEVEN

[21 U.S.C. § 853(a), (b) and (p)]

1.    Pursuant to Title 21, United States Code, Section 853(a)(1) and (p)(2), each defendant who is convicted of any offense set forth in Counts One through Six of this Second Superseding Indictment shall forfeit to the United States the following property:

      a.    All right, title, and interest in  --

           i.    any and all property, real or personal, tangible or intangible, constituting, or derived from, any proceeds said defendant obtained directly or indirectly as the result of each such violation; and,

           ii.    any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, any of each such violation.

      b.    A sum of money equal to the total amount of money involved in each such offense for which said defendant is convicted.  If more than one defendant is convicted of an offense, each defendant so convicted shall be jointly and severally liable for the amount involved in such offense.

      c.    The property described in paragraphs 1(a)(i) and (ii) includes without limitation:

20

i.    defendant LE HUA WU's residence in San

       Gabriel, California; and

ii.   defendant KHANG TRONG NGUYEN's residence in

       San Gabriel, California.

2.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 1, if, as a result of any act or omission of said defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

COUNT EIGHT

[18 U.S.C. §§ 982(a)(1), 982(b); 21 U.S.C. § 853(p)]

1.    Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of any offense set forth in Counts One through Six of this Second Superseding Indictment shall forfeit to the United States:

        a.    All right, title, and interest in any and all property, real or personal, tangible or intangible, involved in each such offense for which said defendant is convicted, and all property traceable to such property.

        b.    A sum of money equal to the total amount of money involved in each such offense for which said defendant is convicted.  If more than one defendant is convicted of an offense, each defendant so convicted shall be jointly and severally liable for the amount involved in such offense.

        c.    The property described in paragraph 1(a) includes without limitation:

            i.    defendant LE HUA WU's residence in San Gabriel, California; and

            ii.   defendant KHANG TRONG NGUYEN's residence in San Gabriel, California.

2.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

22

1  982(b)(1), each defendant shall forfeit substitute property, up
2  to the value of the amount described in paragraph 1, if, as a
3  result of any act or omission of said defendant, the property
4  described in paragraph 1, or any portion thereof, cannot be
5  located upon the exercise of due diligence; has been transferred,
6  sold to, or deposited with a third party; has been placed beyond
7  the jurisdiction of this court; has been substantially diminished
8  in value; or has been commingled with other property which cannot
9  be divided without difficulty.

A TRUE BILL

_____
Foreperson

GEORGE S. CARDONA
Acting United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

KEVIN S. ROSENBERG
ROSALIND WANG
Assistant United States Attorneys
Narcotics Section

23